**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFREY B. REIFMAN, JONATHAN BERG, JULIE HARLEY, CONNOR VAN GESSEL, ARLINE VAN GESSEL, and MIGUEL MORENO individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CANARY CONNECT, INC.,<br><br>Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Jeffrey B. Reifman, Jonathan Berg, Julie Harley, Connor Van Gessel, Arline Van Gessel, and Miguel Moreno ("Plaintiffs"), by and through their counsel, bring this Class Action Complaint against Canary Connect, Inc. ("Defendant" or "Canary"), on behalf of themselves and all others similarly situated, and allege upon personal knowledge as to his own actions, and upon information and belief as to counsel's investigations and all other matters, as follows:

<u>**NATURE OF THE ACTION**</u>

1.      Plaintiffs bring this consumer protection class action against Canary based on Canary's unfair and deceptive business practices with respect to the marketing and sale of its Canary All-in-One, Canary View, and Canary Flex products (the "Product(s)").

2.      The Products are home security systems, offering video and audio recordings which consumers may watch and control from Canary's software application on their cellular or wifi enabled devices (the "Canary App").

3.      Prior to October 3, 2017, consumers who purchased the Products could access nearly all of the Products' key features via the Canary App with just one cost, the Products'

purchase price. Canary advertised and marketed the Products with these features, leading consumers to reasonably believe that these features would remain with the Products at no additional charge.

4.      However, on or around October 3, 2017, Canary unilaterally changed the Products' characteristics, removing three key features and re-offering them to consumers under Canary's Membership Fee paywall of $9.99 per month (the "Bait-and-Switch").[1] Consumers who purchased the Products prior to October 3, 2017 were not exempt from these changes.

5.      Specifically, Canary removed the ability to (1) view full-length videos of motion-detected activities captured by the Products; (2) receive alerts of motion-detected activities when users are at home during the day-time with the Products disarmed; (3) changed video retention of intrusions from unlimited to 10 seconds and finally to 30 seconds; (4) removed the ability to download recordings; (5) have access to any videos for more than 24 hours;  and (6) receive alerts of motion-detected activities when users are at home and asleep, based on their customized sleep schedule. These changes drastically altered the efficacy of the Products as a home security device. Additionally, Canary removed the ability to view clips more than a few days old and deleted previously stored content with no way to retrieve the lost content.

6.      Plaintiffs and other consumers purchased the Products reasonably believing that all key features included with their initial purchase would remain available without any future cost. Had Plaintiffs and other consumers known that Canary would remove the Product's features and place them behind a paywall, they would not have purchased the Products or would have paid significantly less for the Products. Therefore, Plaintiffs and consumers have suffered injury in fact as a result of Canary's unfair and deceptive practices.

7.      Plaintiffs bring this class action lawsuit on behalf of themselves and all others similarly situated. Plaintiffs seek to represent a Nationwide Class, Pennsylvania Subclass, Washington Subclass, Illinois Subclass, California Gift Subclass, California Subclass, and

---

[1] https://www.theverge.com/circuitbreaker/2017/10/4/16426394/canary-smart-home-camera-free-service-update-change (last visited on November 28, 2018).

California Consumer Subclass (defined *infra* in paragraphs 40-51) (referred to as the "Classes").

8.     Plaintiffs, on behalf of themselves and other consumers, are seeking damages, equitable and declaratory relief, reasonable costs and attorneys' fees, and all other remedies this Court deems proper.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. At least one Plaintiff and Defendant are citizens of different states. There are more than 100 putative class members.

10.     This Court has personal jurisdiction over Canary because Canary regularly conducts business in New York, including this District, and has sufficient minimum contacts in New York. This Court also has general jurisdiction over Canary because Canary maintains its principal place of business in this District.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Canary, the sole defendant, is a resident of this District.

## THE PARTIES

12.     Plaintiff Jonathan Berg is a Pennsylvania citizen, residing in Allentown, Pennsylvania. Mr. Berg was interested in purchasing a home security device for his Allentown home. Specifically, Mr. Berg was searching for a home security device that did not include a membership fee. In making his purchasing decision, Mr. Berg relied on Canary's marketing of the Product's features, including Canary's representation on the Product's packaging that there would be no contract or monthly fee. In reliance on these representations, Mr. Berg purchased the Canary All-in-One home security system from the online retailer BestBuy.com on or around August 2016. When Mr. Berg purchased the Product, he reasonably believed that the Product would retain the key features included with its initial sale without any additional cost. Mr. Berg would not have purchased the Product had he known that Canary would remove the features included in the Product's initial purchase.

13.     Plaintiff Julie Harley is an Ohio citizen, residing in Toledo, Ohio. Ms. Harley was interested in purchasing a home security system for her Toledo home. Ms. Harley was searching for a home security device that did not include a membership fee. In making her purchasing decision, Ms. Harley relied on Canary's marketing of the Product's features, including Canary's representation on the Product's packaging that there would be no contract or monthly fee. In reliance on these representations, Ms. Harley purchased the Canary All-In-One home security system from an Apple store in Toledo, Ohio on or around February 2016. Ms. Harley also purchased the Canary Flex home security system from Canary's website on or around May 2017. When Ms. Harley purchased the Products, she reasonably believed that the Product would retain the key features included with their initial sale without any additional cost. Ms. Harley would not have purchased the Products had she known that Canary would remove the features included in the Product's initial purchase.

14.     Plaintiff Jeffrey Reifman is a Washington citizen, residing in Seattle, Washington. Mr. Reifman also maintains a second residence at a condo in Portland, Oregon.  Mr. Reifman was interested in purchasing a home security device for his Portland Condo. Specifically, Mr. Reifman was searching for a home security device that would not require a membership or charge a monthly fee. In making his purchasing decision, Mr. Reifman relied on Canary's marketing of the Product's features, including Canary's representation that there would be no contract or monthly fee. In reliance on these representations, Mr. Reifman purchased the Canary All-in-One home security system from the online retailer Jet.com on or around August 2016. When Mr. Reifman purchased the Product, he reasonably believed that the Product would retain the key features included with its initial sale without any additional cost. Mr. Reifman would not have purchased the Product had he known that Canary would remove the features included in the Product's initial purchase.

15.     Plaintiff Miguel Moreno is an Illinois citizen, residing in Chicago, Illinois. Mr. Moreno was interested in purchasing a home security device for his Chicago home. Specifically, Mr. Moreno was searching for a home security device that would not require a membership or charge a monthly fee. In making his purchasing decision, Mr. Moreno relied on Canary's

4

marketing of the Product's features, including Canary's representation on the Product's packaging that there would be no contract or monthly fee. In reliance of these representations, Mr. Moreno purchased two Canary All-in-One home security systems from an Apple store in Chicago in 2016. When Mr. Moreno purchased the Products, he reasonably believed that the Products would retain the key features included with their initial sale without any additional cost. Mr. Moreno would not have purchased the Product had he known that Canary would remove the features included in the Products' initial purchase.

16.     Plaintiffs Arline and Connor Van Gessel (the "Van Gessel Plaintiffs") are California and Illinois citizens, respectively. Plaintiff Arline Van Gessel resides in San Rafael, California. Plaintiff Connor Van Gessel resides in Chicago, Illinois. The Van Gessel Plaintiffs were interested in purchasing a home security system for Arline's San Rafael home. The Van Gessel Plaintiffs were searching for a home security device that did not include a membership fee. In making their purchasing decision, Plaintiff Connor Van Gessel relied on Canary's marketing of the Product's features, including Canary's representation on the Product's packaging that there would be no contract or monthly fee. In reliance on these representations, Connor Van Gessel purchased the Canary All-In-One home security system directly from Canary through their website. Connor originally purchased an All-in-One home security system for his mother on or about December 2015.  Then, in August of 2016, Connor Van Gessel purchased his own All-in-One home security system, relying on the same representations. When the Van Gessel Plaintiffs purchased the Product, they reasonably believed that the Product would retain the key features included with its initial sale without any additional cost. Once Arline received the Product from Connor, Arline viewed the representations on the packaging, including the representation that the Product would not require any monthly fees. In reliance on these representations, Arline Van Gessel decided to keep the Product as opposed to returning the Product for cash. In order to retain the features removed during the 2017 Bait-and-Switch, Arline Van Gessel purchased a Canary Membership on or around Spring 2018.  Connor Van Gessel never purchased or received a Canary Membership. The Van Gessel Plaintiffs would not have purchased the Product, and Arline Van

Gessel would have returned the Product upon receiving it, had they known that Canary would remove the features included in the Products' initial purchase.

17.     Plaintiffs therefore suffered injury in fact and lost money as a result of Canary's misleading, unfair, and fraudulent practices, as described herein.

18.     Plaintiffs would not have purchased the Products, or would have paid significantly less for them, had they known that Canary would remove key features from the Products, placing them behind Canary's Membership Fee paywall. Despite being deceived by Canary, Plaintiffs are still interested in utilizing a home security system containing the removed features, as long as the Products would not carry any monthly fees. Because Canary has not returned the original functionality of the Products, despite Plaintiffs and class members purchasing the Products with these features included, Plaintiffs and class members currently suffer, and will continue to suffer, an ongoing injury stemming from the Products' lost functionality. Furthermore, Plaintiffs who have either purchased or received the Canary membership are still injured, as they would not have purchased or received the membership but for Canary's conduct and have no plans on repurchasing the membership due to its cost and Canary's conduct alleged herein. Therefore, Plaintiffs seek an injunction requiring Canary to return the Products' original features which were removed during the 2017 Bait-and-Switch.

19.     Defendant Canary Connect, Inc. is incorporated in New York, with its principal place of business in New York, New York. Canary, directly and/or through its agents, manufactures, markets, distributes, and sells the Products in New York. Canary has maintained substantial distribution and sales in this District.

## STATEMENT OF FACTS

### A.     Product Features Prior to Paywall Bait-and-Switch

20.     Canary markets, develops, manufactures, and sells home security systems. Canary sells three varieties of home security system products: Canary All-in-One, Canary View, and Canary Flex (the "Product(s)")

21.     The Canary All-in-One is Canary's original indoor camera, offering features such

as a built-in siren and air-quality sensors. The Canary View is also an indoor camera, but with a lower price tag and fewer features. The Canary Flex is a hybrid indoor-outdoor camera. While the Products contain these slight variations, each of the Products share Canary's key features at issue in this action, such as motion-detected recording and alerts.

22.     On or around October 3, 2017, Canary removed core functionalities shared among each of the Products, despite being previously included in the Products' purchase price, placing them behind Canary's Membership Fee paywall (the "Bait-and-Switch")[2]. Specifically, Canary removed the following three features from each of the Products:

        **a.**     **Ability to Obtain Full-Length Motion-Detected Videos:** Prior to the Bait-and-Switch, the Products recorded full-length video clips when detecting motion. Currently, Canary limited these motion-detected events from full-length videos to "digestible video previews", which are thirty-second clips (increased from ten-seconds after consumer backlash)[3] starting from when the Product initially detected the motion.[4]

        **b.**     **Home Mode:** Prior to the Bait-and-Switch, consumers could receive motion-activated alerts when they were at home with the Products disarmed ("Home Mode").[5] Currently, this feature has been locked behind Canary's Membership Fee paywall.

        **c.**     **Night Mode** Prior to the Bait-and-Switch, consumers could program their Products to monitor for motion-related activity when they were sleeping ("Night Mode").[6]  Currently, this feature has been locked behind Canary's Membership Fee paywall.

---

[2] https://securitybaron.com/blog/canary-now-charging-previously-free-features/ (last visited on November 28, 2018).
[3] https://www.theverge.com/circuitbreaker/2017/11/2/16599820/canary-night-mode-longer-videos-free-plan (last visited on November 28, 2018).
[4] https://www.theverge.com/circuitbreaker/2017/10/4/16426394/canary-smart-home-camera-free-service-update-change (last visited on November 28, 2018).
[5] https://www.macrumors.com/2017/10/05/canary-charging-security-cam/ (last visited on November 28, 2018).
[6] https://www.androidpolice.com/2017/10/05/canary-screws-free-users-reduces-videos-10sec-previews-removes-plenty-features/ (last visited on November 28, 2018).

23.     By removing these key features, Plaintiffs and other consumers were left with less than what they paid for. Consumers did not expect the Products to transition from a home security device which allowed for full-length motion-detected video clips with motion-activated alerts to a device which merely offers sample-sized videos and limited alerts.

24.     Notably, consumers who purchased the Products prior to October 3, 2017 were not "grandfathered in", meaning they were unable to retain the key features described above. Instead, the pre-existing features included in the purchase price were locked behind Canary's Membership Fee paywall. If consumers wish to continue using the key features included in their initial purchase, consumers are required to pay an additional $9.99/month or $99/year.[7]

25.     Accordingly, consumers now have a severely limited experience. The Products no longer function as initially advertised. For those consumers who do not pay extra for previously provided services, the Products have been effectively reduced to a live-streaming camera which, at its best, can provide users with a 30-second clip. For those consumers who do pay extra for the previously provided services, they have been forced to expend additional money on services that were unilaterally stripped from their property.

**B.     Canary's Marketing of the Products**

26.     When consumers purchase a product, they expect its core features to remain the same after the purchase, particularly when these features are explicitly advertised to consumers and relate to the security one's home. Canary's marketing of the Products reinforces this expectation.

27.     For example, an archived snapshot of Canary's website on December 19, 2016 reveals that Canary represented Home Mode and Night Mode as key features to consumers:[8]

---

[7] https://canary.is/membership/ (last visited on November 28, 2018).
[8] https://web.archive.org/web/20161219061416/https://canary.is/how-it-works/ (last visited on November 28, 2018).

   

**Away Mode**
When all members are away, Canary monitors for activity and sends notifications.

**Home Mode**
When a member is home, record events, customize notifications or set to private.

**Night Mode**
Schedule Canary to monitor for activity and send you notifications while you sleep.

**Privacy**
When set to private, Canary's camera and microphone are fully disabled.

28.     In Canary's promotional videos, Canary also represented to consumers that the Products are "an entire security system in a single device"[9] and "A complete security system in a single device",[10] thereby representing to consumers that the Products will retain their key features:



---

[9] https://www.youtube.com/watch?v=dfJ9bEG9WIk (last visited on November 28, 2018).
[10] https://www.youtube.com/watch?v=PAEQMiAGKJE (last visited on November 28, 2018).



29.     Similarly, in other promotional videos, Canary informed consumers that they would "Never Miss A Moment" with their Products, thereby representing that the Products will retain their recording capabilities:[11] [12]



[11] https://gizmodo.com/canary-this-might-be-your-home-security-system-of-the-866804118 (last visited on November 28, 2018).
[12] https://www.youtube.com/watch?v=FhN3_quoyeY (last visited on November 28, 2018).

Never miss a moment.

30.     With full-length recording capabilities downgraded to merely a 30-second clip, among other changes, these representations are no longer true. If consumers desire their Products to regain their key features and ability to "never miss a moment", as they used to before Canary's Bait-and-Switch, consumers are required to pay for Canary's recurring Membership Fee.

31.     Further, nothing on the Product's front or back packaging suggests to consumers that the key features would be removed behind the Canary Membership Fee paywall:[13]

---

[13] https://farm9.staticflickr.com/8629/16277701766_ffb6d14c7a_c.jpg (last visited on November 28, 2018).





**Coming home shouldn't be alarming. Check in on your home anytime, and receive real-time notifications when anything unusual happens.**

**SIMPLE SETUP**
There's no installation. Place Canary on a shelf or table, connect to the Internet, and you're done.

**NO CONTRACT/MONTHLY FEE**
Unlike traditional home security systems, Canary has no contract, installation costs, or required monthly fees.

**VIDEO NOTIFICATIONS**
Canary's HD camera and high-quality microphone record unusual events and send clips straight to your smartphone.

**PERSONALIZED SAFETY NET**
Don't worry if you miss a notification. Canary can loop in your emergency contacts so you're always covered.

**AUTO ARM/DISARM**
Canary senses when you, your family, or your roommates come and go, and switches modes automatically.

**HOME HEALTH**
Canary monitors air quality, temperature, and humidity to help you understand how your home might affect your health.

Download on the **App Store**

GET IT ON **Google play**

CE FC RoHS compliant

CAN100USBK

C100D1605281

8  55942 00501  5

© 2014 Canary. All rights reserved. Canary Connect, Inc. is the exclusive owner of rights and interests in and to the mark Canary, the C Logo, and the Canary Logo.

Designed in New York City. Made in China.

One year limited warranty.

32.     Rather, the Products' packaging explicitly stated that "Canary has no contract installation costs, **or required monthly fees**.":



33.     Plaintiffs could not access Canary's Terms & Conditions or Terms of Service contract at the time of purchase because the contract was located inside the packaging. The packaging is sealed at the time of purchase. Furthermore, no disclaimer of warranty is placed on the outside of the packaging. Rather, as shown above, the packaging explicitly disclaims any contract associated with the Products. Plaintiffs did not see, nor were they aware, of a Terms & Conditions page on Defendant's website.

34.     For this reason, a consumer would not expect the Product's key features be removed and placed behind a paywall.

35.     Indeed, prior to purchasing the Products, consumers had no reason to believe that Canary would eventually hide the Products' key features behind a paywall. Instead, consumers were only informed "about this change with one week's notice[.]"[14]

36.     Accordingly, Plaintiffs and other similarly situated consumers did not know, and had no reason to know, that Defendant would commit the Bait-and-Switch.

37.     Instead, consumers reasonably relied on Canary's labeling and marketing of the Products, and reasonably believed that Products would retain all key features originally held before the Bait-and-Switch. Consumers did not expect that Canary would retroactively downgrade their Products months or years after purchase. On this basis, Plaintiffs and other consumers purchased the Products.

38.     Defendant knew or should have known that Plaintiffs and other members of the Class, in purchasing the Products, would either rely on these representations or on the reasonable belief that the Products' core functionalities would not be removed.

39.     As a result of Canary's actions, Plaintiffs and members of the Class have been harmed. Therefore, Canary should be required to pay for all damages caused to consumers, including Plaintiffs.

## CLASS ALLEGATIONS

40.     Plaintiffs bring this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of themselves and all persons in the United States, who periods purchased any of the Products within the relevant statute of limitation ("Nationwide Class").

---

[14] https://www.theverge.com/circuitbreaker/2017/10/4/16426394/canary-smart-home-camera-free-service-update-change (last visited November 28, 2018).

15

41.     Plaintiff Jonathan Berg also seeks to represent all persons who within the relevant statute of limitations periods were Pennsylvania residents who purchased any of the Products or purchased any of the Products within the state of Pennsylvania ("Pennsylvania Subclass").

42.     Plaintiff Jeffrey Reifman also seeks to represent all persons who within the relevant statute of limitations periods were Washington residents who purchased any of the Products or purchased any of the Products within the state of Washington ("Washington Subclass").

43.     Plaintiff Jeffrey Reifman also seeks to represent all persons who within the relevant statute of limitations periods were Oregon residents who purchased any of the Products or purchased any of the Products within the state of Oregon ("Oregon Subclass").

44.     Plaintiffs Miguel Moreno and Connor Van Gessel also seeks to represent all persons who within the relevant statute of limitations periods were Illinois residents who (1) purchased any of the Products or purchased any of the Products within the state of Illinois ("Illinois Subclass").

45.     Plaintiff Arline Van Gessel also seeks to represent all persons who within the relevant statute of limitations periods were California residents who received any of the Products as a gift ("California Gift Subclass").

46.     Plaintiff Arline Van Gessel also seeks to represent a subclass defined as all California residents who within the relevant statute of limitations periods purchased any of the Products or who purchased any of the Products within the state of California ("California Subclass").

47.     Plaintiff Arline Van Gessel also seeks to represent a subclass defined as all California residents who within the relevant statute of limitations periods purchased any of the Products for personal, family, or household purposes, or purchased any of the Products for these purposes within the state of California ("California Consumer Subclass").

48.     Plaintiff Arline Van Gessel is a member of the Nationwide Class, the California Subclass, the California Consumer Subclass, and the California Gift Subclass.

49.     Plaintiff Berg is a member of the Nationwide Class and Pennsylvania Subclass.

50.     Plaintiff Reifman is a member of the Nationwide Class, Washington Subclass, and Oregon Subclass.

51.     Plaintiff Moreno and Connor Van Gessel are members of the Nationwide Class and the Illinois Subclass.

52.     Excluded from the Class is Canary and any of its parents or subsidiaries, any entities in which they have a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded are any Judge to whom this case is assigned as well as his or her judicial staff and immediate family members.

53.     Plaintiffs hereby reserve the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

54.     The proposed Class meet the criteria for certification under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3):

55.     Collectively, the classes are referred to as the "Classes".

56.     **Numerosity.** According to information and belief, Canary has sold tens of thousands of units of the Products. The Products are sold in store and/or online at various retailers including, but not limited to, Amazon.com, Jet.com, Walmart.com, Walmart stores, BestBuy.com and BestBuy stores. Accordingly, members of the Class are so numerous that their individual joinder herein is impractical. While the precise number of class members and their identities are unknown to Plaintiffs at this time, the number may be determined through discovery.

57.     **Commonality.** Common questions of law and fact exist and predominate over any questions affecting only individual Class members. The common questions include, but are not limited to, whether the removal of the Products' key features on October 3, 2017, was an unfair and deceptive trade practice, and therefore violated various consumer protection statutes and common laws.

58.     **Typicality.** Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and the Class members were all injured through Canary's Bait-and-Switch.  Plaintiffs and the Class members all relied on the Products' key features remaining in place without any additional costs.

17

59.     **Adequacy.** Plaintiffs are adequate representatives of the proposed Class because their interests do not conflict with the interests of the Class members he seeks to represent. Plaintiffs' counsel is experienced in litigating consumer class actions and complex commercial disputes and includes lawyers who have successfully prosecuted similar consumer protection class actions based on consumer products.

60.     **Superiority.** A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute. The injury sustained by each Class member, while meaningful on an individual basis, is not of such magnitude that it is economically feasible to prosecute individual actions against Canary. Even if it were economically feasible, requiring tens of thousands of injured plaintiffs to file individual suits would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments. By contrast, class treatment will present far fewer management difficulties and provide the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

61.     This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) because the questions of law and fact common to the members of the Class predominate over any questions that affect only individual members, and because the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy.

62.     **Injunctive and Declaratory Relief.** Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) and (c). Canary has acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

**COUNT I**
**Breach of Implied Contract**
**(*for the Classes*)**

63.     Plaintiffs reallege and incorporate by reference Paragraphs 1-62 above as if they were fully set forth herein.

64.     Canary solicited and invited Plaintiffs and Class members to purchase its Products. Plaintiffs and Class members accepted Canary's offers and purchased the Products.

65.     Plaintiffs and Class members made and paid for purchases of the Products. In doing so, Plaintiffs and Class members entered into implied contracts with Canary, pursuant to which Canary impliedly agreed to keep and maintain the Products' key features. However, because the key features of the Products have been removed, such as the ability to record full-length videos, Canary breached this implied contract.

66.     Plaintiffs and Class members would not have purchased the Products in the absence of the implied contract between them and Canary.

67.     Plaintiffs and Class members fully performed their obligations under the implied contracts with Canary.

68.     Canary was obligated to perform its obligations under the implied contracts it had with Plaintiffs.

69.     Canary breached the implied contracts it made with Plaintiffs and Class members by failing to maintain the Products as a normal, properly-functioning home security system and by unilaterally removing key features from the Products.

70.     As a direct and proximate result of Canary's breaches of the implied contracts between Canary and Plaintiffs and Class members, Plaintiffs and Class members sustained actual losses and damages as described in detail above.

## COUNT II
### Trespass to Chattel
#### (*for the Classes*)

71.     Plaintiffs realleges and incorporates by reference Paragraphs 1-62 above as if they were fully set forth herein.

72.     By purchasing the Products, Plaintiffs and Class Members owned and rightfully possessed Canary's security home Products, the property at issue.

73.     Canary intentionally interfered with Plaintiffs' use and/or possession of the Product and has damaged the Product by purposefully removing several key features from the Products

and Canary App, despite Plaintiffs and consumers having purchased the Products with those features included. As a result, Canary severely degraded the quality and functionality of the device after Plaintiffs and consumers have purchased the Products.

74. Plaintiffs did not consent to nor were they aware of Defendant's removal of key features from the Products until after their purchase.

75. As a direct and proximate result of Canary's intentional trespass to Plaintiffs and Class members' property, Plaintiffs and Class members have suffered economic losses and other general and specific damages, including but not limited to the price paid for the Products, the price paid to access the features hidden behind Canary's paywall, and any interest that would have accrued on these monies, all in an amount to be proven at trial.

## COUNT III
### Breach of Implied Warranty of Merchantability
### (*for the Classes*)

76. Plaintiffs reallege and incorporate by reference Paragraphs 1-62 above as if they were fully set forth herein.

77. A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

78. To be merchantable, goods must at least be fit for the ordinary purpose for which such goods are used. The goods must also conform to the promises or affirmations of fact made on the label.

79. Canary is a merchant with respect to selling home security devices and services, including the Products and the Canary App. Therefore, an implied warranty of merchantability was included with every unit of the Products sold.

80. By selling the Products to consumers, Canary impliedly warranted that the Products would be fit for their ordinary purpose—fully-functioning home security devices. Ordinary, fully-functioning home security systems would not limit recorded, motion-detected events, such as

burglaries, to thirty-second clip samples only available for 24 hours. Rather, an ordinary, fully-functioning home security system would allow users to view the entire recording.

81.     Further, by representing that the Products are fully-functioning home security systems, Defendant made a promise or affirmation of fact on the label as to the quality of the Product.

82.     However, while Canary previously offered these features to consumers, Canary committed a Bait-and-Switch, hiding these core functions behind the Canary Membership Fee paywall. By removing these functionalities, the Products are no longer are fit for their ordinary purpose as a fully-functioning home security system. Furthermore, the Products no longer conform to the promise and/or affirmation of fact on the Products' label, that they are a fully-functioning home security system.

83.     Therefore, the Products provided by Defendant are not merchantable and Canary has breached their implied warranty of merchantability in regard to the Products and services, via the Canary App, provided to consumers.

84.     If Plaintiffs and other members of the Class had known that the Products were defective, they would not have purchased it and/or would not have been willing to pay as much for it. Therefore, as a direct and/or indirect result of Canary's breach, Plaintiffs and members of the Class have suffered an injury and are entitled to recover all damages available under the law.

**COUNT IV**
**Violation of Washington's Consumer Protection Act ("CPA"),**
**Wash. Rev. Code Ann. §§ 19.86.010,** *et seq.*
**(***for the Washington Subclass***)**

85.     Plaintiff Reifman realleges and incorporates by reference Paragraphs 1-62 above as if they were fully set forth herein.

86.     Plaintiff Reifman brings this claim individually and on behalf of the members of the proposed Washington Subclass against Canary.

87.     WASH. REV. CODE ANN. § 19.86.020 provides that "[u]nfair methods of competition

and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

88.     WASH. REV. CODE ANN. § 19.86.010 defines "trade" as "includ[ing] the sale of assets […] directly or indirectly affecting the people of the state of Washington."

89.     Canary committed the acts alleged herein in the course of "trade" within the meaning of WASH. REV. CODE ANN. § 19.86.010 as the Bait-and-Switch directly affects consumers in the state of Washington.

90.     The Products' labeling complained of herein is unfair because it had the tendency or capacity to deceive consumers into believing that the Products would retain the key features included with the Products at the time of purchase. Through Canary's marketing and labeling, consumers were led to believe that the features included in their purchase would not be removed and held behind a paywall, especially when Canary warranted on the packaging that the Products would not require a monthly fee. However, because Canary removed these key features from the Products, Plaintiff Reifman and members of the Washington Subclass were deceived.

91.     The deceptive marketing and sale of the Products alleged herein impacted the public interest because they occurred in the course of Canary's business on a repeated basis throughout the state of Washington and the United States.

92.     Plaintiff Reifman and the Washington Subclass have suffered injury in fact, including the loss of monies paid, as a result of Canary's deceptive practices. Plaintiff Reifman and the Washington Subclass were directly and proximately injured by Canary's conduct and lost money due to Canary's deceptive and unfair labeling, marketing and practices because they would not have purchased or paid as much for the Products had they known that the Products' features would be removed and placed behind a paywall.

93.     The wrongful conduct alleged herein fully occurred in and stemmed from Canary's business practices.

94.     Defendant is liable to Plaintiff Reifman and the Washington Subclass for damages in amounts to be proven at trial, including attorney's fees, costs, to enjoin Canary from violating

the CPA or violating it in the same fashion in the future as discussed herein, and any other relief

the Court deems appropriate under WASH. REV. CODE ANN. § 19.86.090.


**COUNT V**
**Oregon Unlawful Trade Practices Act – ORS §646.605 *et seq*.**
**(For the Oregon Subclass)**

95.     Plaintiff Reifman realleges and incorporates by reference Paragraphs 1-62 above as

if they were fully set forth herein.

96.     Plaintiff Reifman brings this claim individually and on behalf of the members of

the proposed Oregon Subclass against Canary.

97.     In addition, without waiving any of the other causes of action pleaded herein,

without waiving any procedural, contractual, statutory or common-law right, and incorporating all

other allegations herein to the extent they are not inconsistent with the cause of action pleaded

here, Defendant is liable to the Plaintiff and the Oregon Subclass for violating portions of the

Oregon Unlawful Trade Practices Act (UTPA) (Or. Rev. Stat. §646.605 *et seq.*).

98.     Defendant and Plaintiff Reifman are a "person[s]" within the meaning of the

Oregon Unlawful Trade Practices Act.

99.     Plaintiff Reifman purchased the product for personal use at his Portland, Oregon

condominium.

100.     Plaintiff Reifman and the Oregon Subclass have suffered injury in fact, including

the loss of monies paid, as a result of Canary's deceptive practices. Plaintiff Reifman and the

Oregon Subclass were directly and proximately injured by Canary's conduct and lost money due

to Canary's deceptive and unfair labeling, marketing and practices because they would not have

purchased or paid as much for the Products had they known that the Products' features would be

removed and placed behind a paywall.  Defendant knowingly used or employed methods, acts or

practices declared unlawful in by ORS 646.608.  Due to this conduct Plaintiff and the class have suffered an ascertainable loss.

101.    The actions of defendant have violated the Oregon UTPA, including but not limited to, the following sections: ORS 646.608(1)(e)(represents goods as having characteristics, uses, benefits or qualities that they do not possess); and ORS 646.608(1)(u) (engages in unfair or deceptive conduct in trade or commerce).

102.    By representing that the Products offer specific features, but subsequently removing these features after consumers have already paid for the Products, Canary misrepresented the Products' characteristics. Canary further misrepresented the Products' characteristics by representing that the Products require no monthly fees, but subsequently hiding the features behind a monthly fee requirement.  Therefore, Canary has violated ORS 646.608(1)(e).

103.    By representing that the Products offer specific features, but subsequently removing these features after consumers have already paid for the Products, Canary misrepresented the Products' characteristics. Canary further misrepresented the Products' characteristics by representing that the Products require no monthly fees, but subsequently hiding the features behind a monthly fee requirement.  Therefore, Canary has violated ORS 646.608(1)(e).

104.    By offering the specific features which were removed during the Bait-and-Switch at no additional cost during the Products' purchase, but subsequently charging consumers for these features after their consumers have completed their purchase, Canary committed an "Unfair or Deceptive Use of 'Free' Offers" within the meaning of Or. Admin. R. 137-020-0015(2)(a)(D).

105.    Defendant is liable to Plaintiff Reifman and the Oregon Subclass for damages in amounts to be proven at trial.  For these reasons, this Court should award damages for out of pocket costs and associated damages, reasonable attorney fees, to enjoin Canary from violating Oregon

law in the future as well as other appropriate equitable relief, costs and disbursements ,and punitive

damages for the acts of Defendant as allowed by ORS 646.638.

**COUNT VI**
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code §§ 1750, _et seq_.**
**(_for the California Consumer Subclass_)**

106.    Plaintiff Arline Van Gessel repeats the allegations contained in paragraphs 1-62

above as if fully set forth herein.

107.    Plaintiff Arline Van Gessel brings this claim individually and on behalf of the

members of the proposed California Consumer Subclass against Canary.

108.    The Products are a "good" pursuant to Cal. Civ. Code § 1761(a), and the purchases

of the Products by Plaintiff and members of the California Consumer Subclass constitute

"transactions" pursuant to Cal. Civ. Code § 1761(e).

109.    Plaintiff Arline Van Gessel is a "consumer" pursuant to Cal. Civ. Code § 1761(d)

because she purchased the Products for family purposes. Specifically, Plaintiff Arline Van Gessel

purchased the Canary Membership.

110.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have

sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have

. . . ." By representing that the Products offer specific features, but subsequently removing these

features after consumers have already paid for the Products, Canary misrepresented the Products'

characteristics. Canary further misrepresented the Products' characteristics by representing that the

Products require no monthly fees, but subsequently hiding the features behind a monthly fee

requirement.  Therefore, Canary has violated section 1770(a)(5) of the CLRA.

111.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a

particular standard, quality, or grade, or that goods are of a particular style of model, if they are

another." By representing that the Products offer specific features, but subsequently removing these

features after consumers have already paid for the Products, Canary represented that the Products are

25

of a particular standard and/or quality when they are not. Canary further misrepresented the Products' standard and/or quality by representing that the Products require no monthly fees, but subsequently hiding the features behind a monthly fee requirement. Therefore, Canary violated section 1770(a)(7) of the CLRA.

112.   At all relevant times, Canary knew or reasonably should have known that in advertising and representing the Products' features which were removed during the 2017 Bait-and-Switch, and additionally representing that the Products do not require a monthly fee, that Plaintiff Arline Van Gessel and other members of the California Consumer Subclass would reasonably and justifiably rely on the representations about the Products in purchasing them.

113.   Plaintiff and members of the California Consumer Subclass reasonably and justifiably relied on Canary's misleading and fraudulent representations about the Products when purchasing them.  Moreover, based on the materiality of Canary's fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiff Arline Van Gessel and members of California Consumer Subclass.

114.   Plaintiff Arline Van Gessel and members of the California Consumer Subclass suffered injuries caused by Canary because they would not have purchased the Products or would have paid significantly less for the Products, had they known that Canary's conduct was misleading and fraudulent.

115.   Under Cal. Civ. Code § 1780(a), Plaintiff Arline Van Gessel and members of the California Consumer Subclass seek damages, restitution, declaratory and injunctive relief, and all other remedies the Court deems appropriate for Canary's violations of the CLRA.

116.   Under Cal. Civ. Code § 1780(a), Plaintiff Arline Van Gessel and all members of the California Consumer Subclass seek injunctive and equitable relief for Canary's violations of the CLRA. Plaintiff Arline Van Gessel seeks to enjoin Canary from violating the CLRA or violating it in the same fashion in the future as discussed herein. Counsel for Plaintiff Arline Van Gessel has mailed a notice and demand letter by certified mail, with return receipt requested,

consistent with California Civil Code § 1782(a). If Canary fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff Arline Van Gessel will amend her complaint and this cause of action to include a request for damages as permitted by Civil Code § 1782(d), inter alia.

**COUNT VII**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, <em>et seq.</em>**
**(<em>for the California Subclass, California Consumer Subclass, and California Gift Subclass</em>)**

117.    Plaintiff Arline Van Gessel repeats the allegations contained in paragraphs 1-62 above as if fully set forth herein.

118.    Plaintiff Arline Van Gessel brings this claim individually and on behalf of the members of the proposed California Subclass, California Gift Subclass, and California Consumer Subclass against Defendant.

119.    UCL §17200 provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

120.    Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

121.    Canary's false and misleading advertising of the Product therefore was and continues to be "unlawful" because it violates the CLRA, California's False Advertising Law ("FAL"), and other applicable laws as described herein.

122.    As a result of Defendant's unlawful business acts and practices, Defendant has and continues to unlawfully obtain money from Plaintiff Arline Van Gessel, and members of the California Subclass, the California Gift Subclass, and California Consumer Subclass.

123.    Under the UCL, a business act or practice is "unfair" if the defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

124.    Canary's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who relied on the representations of the Products, but had these features removed by Defendant and placed behind a paywall without their consent. Deceiving consumers by purposefully baiting consumers into purchasing the Products through representing specific features, then subsequently removing these features behind a pay-wall after consumers have purchased the Products, is of no benefit to the consumers, especially when Defendant represented that Product carries no monthly fee.  Therefore, Defendant's conduct was and continues to be "unfair."

125.    As a result of Canary's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff, and members of both the California Subclass and California Consumer Subclass.

126.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives, or is likely to deceive, members of the consuming public.

127.    Canary's conduct here was and continues to be fraudulent because it has and will continue to refrain from providing the features removed during the Bait-and-Switch, despite consumers having paid for them.  Because Canary misled and will likely continue to mislead Plaintiff and members of the California Subclass, California Gift Subclass, and California Consumer Subclass, Canary's conduct was "fraudulent."

128.    As a result of Canary's fraudulent business acts and practices, Canary has and continues to fraudulently obtain money from Plaintiff, and members of the California Subclass, California Gift Subclass, and California Consumer Subclass.

129.    Plaintiff requests that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to Plaintiff, and members of both the California Subclass and California Consumer Subclass, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein.  Otherwise, Plaintiff, and members of both the California Subclass and California Consumer Subclass may be irreparably harmed and/or denied an effective and

complete remedy if such an order is not granted.

**COUNT VIII**
**Violation of California's False Advertising Law ("FAL"),**
**California Business & Professions Code §§ 17500,** *et seq*
**(for the California Subclass, California Consumer Subclass, and California Gift Subclass)**

130.    Plaintiff Arline Van Gessel repeats the allegations contained in paragraphs 1-62 above as if fully set forth herein.

131.    Plaintiff Arline Van Gessel brings this claim individually and on behalf of the members of the proposed California Subclass, California Gift Subclass, and California Consumer Subclass against Defendant.

132.    California's FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code §§ 17500.

133.    Canary has represented to the public, including Plaintiff Arline Van Gessel and members of the California Subclass, California Gift Subclass, and California Consumer Subclass, that the Products contained features and that the Products would not require any monthly fee. Canary's representation is false and misleading as, on October 3, 2017, Canary removed certain features from the Products and placed them behind a monthly paywall. Because Canary has disseminated false and misleading information regarding their Products, and Canary knew, or should have known through the exercise of reasonable care, that the information was false and misleading, Canary has violated the FAL.

134.    As a result of Canary's false advertising, Canary has fraudulently obtained money from Plaintiff Arline Van Gessel and members of the California Subclass, the California Gift Subclass, and the California Consumer Subclass.

135.    Plaintiff Arline Van Gessel requests that this Court cause Canary to restore the fraudulently removed features from the products to Plaintiff Arline Van Gessel and members of the California Subclass, California Gift Subclass, and California Consumer Subclass, to disgorge the profits Canary made on these transactions, and to enjoin Canary from violating the FAL or violating it in the same fashion in the future as discussed herein.  Otherwise, Plaintiff Arline Van Gessel and members of both the California Subclass and California Consumer Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**COUNT IX**
**Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law**
**("UTPCPL"),**
**73 PA. STAT. §§ 201-1, *et seq***
***(for the Pennsylvania Subclass)***

136.    Plaintiff Berg repeats the allegations contained in paragraphs 1-62 above as if fully set forth herein.

137.    Plaintiff Berg brings this claim individually and on behalf of the members of the proposed Pennsylvania Subclass against Canary.

138.    Plaintiff Berg and other Pennsylvania Class members classify as "[p]ersons" pursuant to §201-2 of the UTPCPL and may sue as consumers because Canary's business activities involve trade or commerce, are addressed to the Pennsylvania market and its consumers directly, and otherwise implicate consumer protection concerns.

139.    73 Pa. Stat. § 201-3 and 201-2(4)(xxi) prohibits any fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

140.    When Canary represented the Products' features and representations, including the assurance on the packaging that the Products would not require a monthly fee, and subsequently removed these features behind a monthly fee, Canary knew or should have known that its conduct was fraudulent, deceptive, and would create confusion and misunderstanding amongst Plaintiff Berg and the Pennsylvania Subclass members.

141.    Canary's conduct further violates enumerated, prohibited acts and practices under

§ 201-2 of the UTPCPL.

142.   73 Pa. Stat. § 201-2(4)(v) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have[.]"  By representing that the Products offer specific features, but subsequently removing these features after consumers have already paid for the Products, Canary misrepresented the Products' characteristics. Canary further misrepresented the Products' characteristics by representing that the Products require no monthly fees, but subsequently hiding the features behind a monthly fee requirement.  Therefore, Canary has violated section 201-2(4)(v) of the UTPCPL.

143.   73 Pa. Stat. § 201-2(4)(vii) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style of model, if they are another."  By representing that the Products offer specific features, but subsequently removing these features after consumers have already paid for the Products, Canary represented that the Products are of a particular standard and/or quality when they are not. Canary further misrepresented the Products' standard and/or quality by representing that the Products require no monthly fees, but subsequently hiding the features behind a monthly fee requirement.  Therefore, Canary violated section 201-2(4)(vii) of the UTPCPL.

144.   73 Pa. Stat. § 201-2(4)(xiv) prohibits "[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made."  By representing on the packaging of the Products that the Products require "NO CONTRACT/MONTHLY FEE" and that the Products "ha[ve] no contract, installation costs, or required monthly fees", prior to the purchase of the goods, Canary guaranteed and warranted to Plaintiff Berg and other members of the Pennsylvania Subclass that the Products would not involve any monthly fees. By removing the aforementioned features and restricting them behind a monthly fee, Canary violated section 201-2(4)(xiv) of the UTPCPL.

145.   Plaintiff Berg and the Pennsylvania Subclass members suffered injuries as a direct result of Canary's violations of the UTPCPL in that they would not have paid for the Products, or would have paid substantially less for them, had they known that Canary would engage in the

deceptive conduct alleged herein.

146.    Canary continues to violate the UTPCPL by refraining from returning these features to members of the Pennsylvania Subclass.

147.    As a direct and proximate result of Canary's deceptive acts or practices alleged herein, Plaintiff Berg and the Pennsylvania Subclass members were damaged.

148.    Plaintiff Berg requests that this Court cause Canary to restore this unlawfully, unfairly, and fraudulently obtained money to Plaintiff, and members of the Pennsylvania Subclass, to disgorge the profits Canary made on these transactions, award reasonable attorney's fees pursuant to § 201-9.2 of the UTPCPL, and to enjoin Canary from violating the UTPCPL or violating it in the same fashion in the future as discussed herein.  Otherwise, Plaintiff, and members of the Pennsylvania Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT X
### Violation of Ohio's Consumer Sales Practices Act ("CSPA"), O.R.C. §§ 1345.02, *et seq*
### (*for the Ohio Subclass*)

149.    Plaintiff Harley repeats the allegations contained in paragraphs 1-62 above as if fully set forth herein.

150.    Plaintiff Harley brings this claim individually and on behalf of the members of the proposed Ohio Subclass against Canary.

151.    O.R.C. § 1345.02(A) provides that "no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

152.    Canary is a "supplier" within the meaning of O.R.C. § 1345.01(C) as Canary is a "seller […] or other person engaged in the business of effecting or soliciting consumer transactions[.]"

153.    Plaintiff Harley and Class members' purchases of the Products qualify as "consumer transaction[s]" as they involve the "sale […] of an item of goods […] to an individual for purposes that are primarily personal, family, or household[.]"

154.    O.R.C. § 1345.02(B) enumerates examples of conduct which qualify as "deceptive" under O.R.C. § 1345.02(A).

155.    O.R.C. § 1345.02(B)(1) prohibits representing "[t]hat the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that it does not have." By representing that the Products offer specific features, but subsequently removing these features after consumers have already paid for the Products, Canary misrepresented the Products' characteristics. Canary further misrepresented the Products' characteristics by representing that the Products require no monthly fees, but subsequently hiding the features behind a monthly fee requirement. Therefore, Canary has violated section 1345.02(B)(1) of the UTPCPL.

156.    O.R.C. § 1345.02(B)(2) prohibits representing "[t]hat the subject of a consumer transaction is of a particular standard, quality, trade, style, prescription, or model, if it is not." By representing that the Products offer specific features, but subsequently removing these features after consumers have already paid for the Products, Canary represented that the Products are of a particular standard and/or quality when they are not. Canary further misrepresented the Products' standard and/or quality by representing that the Products require no monthly fees, but subsequently hiding the features behind a monthly fee requirement. Therefore, Canary has violated section 1345.02(B)(2) of the UTPCPL.

157.    O.R.C. § 1345.03(A) provides that "[n]o supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

158.    O.R.C. § 1345.03(B) enumerates examples of conduct which qualify as "deceptive" under O.R.C. § 1345.02(A).

159.    In determining whether an action is unconscionable, O.R.C. § 1345.03(B)(6) requires the court to consider "whether the supplier knowingly made a misleading statement of

opinion on which the consumer was likely to rely on the consumer's detriment." By knowingly representing that the Products do not require a monthly fee, Canary knew that consumers were likely to rely on this statement. Further, Defendant knew that consumers would rely on this representation to their detriment, as they would purchase the Products, reasonably relying that Canary would retain the features present when consumers purchased the Products. For this reason, Canary's conduct was unconscionable under O.R.C. § 1345.03(B)(6).

160.    Plaintiff Haley and the Ohio Subclass members suffered injuries as a direct result of Canary's violations of the CSPA in that they would not have paid for the Products, or would have paid substantially less for them, had they known that Canary would engage in the deceptive conduct alleged herein.

161.    Canary continues to violate the CSPA by refraining from returning these features to members of the Ohio Subclass.

162.    As a direct and proximate result of Canary's deceptive acts or practices alleged herein, Plaintiff Haley and the Ohio Subclass members were damaged.

163.    Plaintiff Hayley requests that this Court cause Canary to restore this unlawfully, unfairly, and fraudulently obtained money to Plaintiff, and members of the Ohio Subclass, to disgorge the profits Canary made on these transactions, award reasonable attorney's fees pursuant to § 1345.09 of the UTPCPL based on Canary's knowing violations of the statute, and to enjoin Canary from violating the UTPCPL or violating it in the same fashion in the future as discussed herein.  Otherwise, Plaintiff, and members of the Ohio Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT XI
### Violation of Illinois' Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq*
### (*for the Illinois Subclass*)

164.    Plaintiff Moreno repeats the allegations contained in paragraphs 1-62 above as if fully set forth herein.

165.   Plaintiff Moreno brings this claim individually and on behalf of the members of the proposed Illinois Subclass against Defendant.

166.   815 ILCS 505/2 provides as follows:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965,1 in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

167.   Plaintiff Moreno and members of the Illinois Subclass are "consumers" within the meaning of 815 ILCS 505/1(e), as they are "person[s] who purchase[d] … merchandise … for his use or that of a member of his household."

168.   Canary is engaged in "trade" and "commerce" within the meaning of 815 ILCS 505/1(f) as Canary is engaged in "advertising, offer for sale, sale, or distribution of … property … directly [and] indirectly affecting the people of this State."

169.   Canary's conduct alleged herein violates 815 ILCS 505/2 as Canary engaged in misrepresentations and false promises with the intent that consumers like Plaintiff Moreno and the Illinois Subclass members would rely on these misrepresentations. Specifically, Canary represented that the Products contain specific features, despite subsequently removing these features and placing them behind a monthly membership fee. Defendant's representation on the Products' packaging that the Products involve no monthly fee, followed by Canary's removal of the features behind a monthly fee, further demonstrates the unfairness and deceptiveness of Canary's conduct.

170.   Plaintiff Moreno and members of the Illinois Subclass suffered injuries as a direct result of Canary's violations of the ICFA in that they would not have paid for the Products, or would have paid substantially less for them, had they known that Canary would engage in the

deceptive conduct alleged herein.

171.   Canary continues to violate the ICFA by refraining from returning these features to members of the Ohio Subclass.

172.   As a direct and proximate result of Canary's deceptive acts or practices alleged herein, Moreno and members of the Illinois Subclass were damaged.

173.   Plaintiff Moreno requests that this Court cause Canary to restore this unlawfully, unfairly, and fraudulently obtained money to Plaintiff, and members of the Illinois Subclass, to disgorge the profits Canary made on these transactions, award reasonable attorney's fees pursuant to 815 ILCS 505/10a(c) of the ICFA based on Canary's knowing violations of the statute, and to enjoin Canary from violating the ICFA or violating it in the same fashion in the future as discussed herein.  Otherwise, Plaintiff, and members of the Illinois Subclass, may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### COUNT XII
### Unjust Enrichment
### (*for the Classes*)

174.   Plaintiffs reallege and incorporate by reference Paragraphs 1-62 above as if they were fully set forth herein.

175.   Plaintiffs and members of the Classes conferred a monetary benefit on Canary. Specifically, they purchased goods and services from Canary.  In exchange, Plaintiffs and members of the Classes should have received from Canary the Products and services that were the subject of the transaction and should have been entitled to have these Products and services remain unchanged, particularly in the manner conducted by Canary, which represented that the Products would not require a monthly fee despite removing the product features behind a monthly paywall.

176.   In doing so, Canary have unjustly benefited by receiving higher prices for their Products than would have been possible absent the wrongful conduct, or if Canary had informed consumers prior to purchase that the Products would be degraded.

177.    Canary knew that Plaintiffs and members of the Classes conferred a benefit on Canary and has voluntarily accepted or retained that benefit.

178.    Plaintiffs and members of the Classes have no adequate remedy at law.

179.    Under the circumstances, it would be unjust for Canary to be permitted to retain any of the benefits that Plaintiffs and members of the Classes conferred on it.

180.    Canary should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and members of the Classes, proceeds that it unjustly received from them. In the alternative, Canary should be compelled to refund the amounts that Plaintiff and Class members overpaid.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant as follows:

a)    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as representative of the Classes; and naming Plaintiffs' attorneys as Class Counsel to represent the Class.

b)    For an order declaring that Canary's conduct violates the statutes and laws referenced herein;

c)    For an order finding in favor of Plaintiffs, and the Classes, on all counts asserted herein;

d)    For an order awarding all damages in amounts to be determined by the Court and/or jury;

e)    For prejudgment interest on all amounts awarded;

f)    For interest on the amount of any and all economic losses, at the prevailing legal rate;

g)    For an order of restitution and all other forms of equitable monetary relief;

h)    For injunctive relief as pleaded or as the Court may deem proper;

i)    For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees,

expenses and costs of suit, including as provided by statute such as under Fed. R. Civ. P. Rule 23(h), 73 Pa. Stat. § 201-9.2, O.R.C. § 1345.09, 815 ILCS 505/10a(c) and Wash. Rev. Code Ann. § 19.86.090; and

j)      For any other such relief as the Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff demands a trial by jury on all issues so triable.


Dated: December 5, 2018                     By: */s/ Nina Varindani*
                                             Nina Varindani (NV-1090)
                                             685 Third Avenue, 26th Fl.
                                             New York, NY 10017
                                             Telephone: 212-983-9330
                                             Fax: 212-983-9331
                                             Email: nvarindani@faruqilaw.com

                                             Timothy J. Peter
                                             (*Pro Hac Vice* forthcoming)
                                             1617 JFK Boulevard, Suite 1550
                                             Philadelphia, PA 19103
                                             Telephone: (215) 277-5770
                                             Fax: (215) 277-5771
                                             E-mail: tpeter@faruqilaw.com

                                             Bonner C. Walsh
                                             (*Pro Hac Vice* forthcoming)
                                             WALSH PLLC
                                             1561 Long Haul Road
                                             Grangeville, ID 83530
                                             Telephone: (541) 359-2827
                                             Facsimile: (866) 503-8206
                                             Email: bonner@walshpllc.com

                                             Michael Fuller (*Pro Hac Vice* forthcoming)
                                             OlsenDaines, P.C.
                                             US Bancorp Tower
                                             111 SW 5th Ave., 31st Fl.
                                             Portland, Oregon 97204
                                             E-mail: michael@underdoglawyer.com
                                             Direct 503-201-4570

                                             Kelly Donovan Jones

(*Pro Hac Vice* forthcoming)
819 SE Morrison St Ste 255
Portland, Oregon 97214
E-mail: kellydonovanjones@gmail.com
Phone 503-847-4329

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

I, Arline Van Gessel, declare as follows:

1.     I am the Plaintiff in this action and a citizen of the State of California. I have personal knowledge of the facts stated herein and, if called as a witness, I could testify competently thereto.

2.     This Class Action Complaint is filed in the proper place of trial because Defendant maintains its principle place of business in this District.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on December 3___, 2018 at San Rafael, California.

*Arline Van Gessel*
Arline Van Gessel (Dec 4, 2018)
_____
Arline Van Gessel