```
         J4HVREIC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
3    JEFFREY B. REIFMAN,
     individually and on behalf of
4    all others similarly situated,
     ET AL,
5
                    Plaintiffs,
6
               v.                            18 CV 11365 (PGG)
7
     CANARY CONNECT, INC.,
8
                    Defendant.               CONFERENCE
9
     ------------------------------x
10                                            New York, N.Y.
                                              April 17, 2019
11                                            11:06 a.m.

12   Before:

13                    HON. PAUL G. GARDEPHE,

14                                            District Judge

15                         APPEARANCES

16   WALSH PLLC
          Attorneys for Plaintiffs
17   BY:  BONNER C. WALSH
          -AND-
18   FARUQI & FARUQI
     BY:  TIMOTHY J. PETER
19
     HINSHAW & CULBERTSON
20        Attorneys for Defendant
     BY:  EDWARD K. LENCI
21

22

23

24

25
```

J4HVREIC

1     (Case called)
2     THE DEPUTY CLERK:  Is the plaintiff ready?
3     MR. PETER:  Yes.
4     THE DEPUTY CLERK:  Please state your appearance.
5     MR. PETER:  Timothy Peter, on behalf of the
6 plaintiffs.
7     MR. WALSH:  Bonner Walsh, on behalf of the plaintiff.
8     THE DEPUTY CLERK:  Defendant ready?
9     MR. LENCI:  Defendant is ready.
10     THE DEPUTY CLERK:  Please state your appearance, sir.
11     MR. LENCI:  Edward Lenci of the law firm of Hinshaw &
12 Culbertson in New York City.
13     I represent defendant Canary Connect, Inc.
14     THE COURT:  All right.  This is a case alleging
15 deceptive business practices with respect to the marketing and
16 sale of home security video recording products.
17     I have a few questions I want to ask.
18     How did consumers buy this product?  Do they walk into
19 a store and buy it?  Do they buy it online?  How did they buy
20 it?
21     MR. PETER:  Your Honor there are a few different ways.
22 Some people bought it on the Canary website, and some people
23 went to say like a Best Buy or an electronics store and bought
24 it that way, I believe.
25     THE COURT:  Okay.

1           And if they bought it online -- I guess I should say
2   for the record there's an issue about whether consumers
3   accepted certain terms, including an arbitration provision.
4           So if they bought it online, in order to consummate
5   that transaction, did they have to -- is it your position that
6   they -- what's your position of whether they had to accept
7   terms and conditions when they purchased the product?
8           MR. PETER:  Based on the evidence that Canary has
9   presented us in their letter, the alleged contract only happens
10  when you're installing the application that you need to after
11  the purchase has been completed, you received your camera in
12  the mail.  Then you go to the website to download a thing, you
13  open up the application, it says please accept the terms, the
14  privacy policy, the end user license.
15          THE COURT:  By this time you've already paid your
16  money.
17          MR. PETER:  Correct, your Honor.
18          THE COURT:  Your money is gone.
19          MR. PETER:  Yes.
20          THE COURT:  And after you paid your money, then they
21  say, Well, if you want to install it, you've got other things
22  you've got to agree to.
23          MR. PETER:  Yes, your Honor.
24          THE COURT:  All right.
25          Let me hear from defense counsel.

1            Do you agree that was the process?

2            MR. LENCI:  Well, I do agree that they bought it
3    online, through a brick and mortar Apple store or through a
4    store such as Best Buy.  And once they opened the box and
5    wanted to activate the system, they were required to accept the
6    terms.  There was a hyperlink to the terms and conditions right
7    above the word "accept."  And all of them did it.  And all of
8    them accepted the terms and conditions of the product and
9    services, which included an extremely broad arbitration clause
10   with a class action waiver.

11           THE COURT:  So what if they didn't accept the terms
12   and conditions?  What if they said --

13           MR. LENCI:  They'd have to return the product.

14           THE COURT:  I'm sorry, they'd have to --

15           MR. LENCI:  They'd have to return the product.

16           THE COURT:  But then they get their money back, I
17   guess, right?

18           MR. LENCI:  I would suppose they would get their money
19   back.

20           THE COURT:  So the defendants want to make a motion to
21   compel arbitration.  What I would like to understand is, is
22   there a dispute -- well, I guess there are a couple of
23   questions.  One is to the extent they -- well, I guess it
24   doesn't matter whether they bought it at a brick and mortar
25   store or not, because this issue about clicking on the "accept"

J4HVREIC

1    button presumably would arise whether you bought it at a brick
2    and mortar store or you bought it online.
3             Do the parties disagree about whether the "accept"
4    button was always there?  Is there a disagreement about that?
5    Because it's a little unclear to me.
6             The plaintiffs complain that the defendants only used
7    the most recent version of the "accept" button stuff,
8    suggesting that, Well, maybe it wasn't always this way.
9             So I wanted to inquire, is there a dispute about
10   whether the "accept" button was always there or not?
11            MR. PETER:  I believe there is.  We see what they've
12   presented to your Honor.  We understand that to be the current
13   app.  Actually, in one of the contracts they provided, it
14   actually asks the question.  I actually don't believe that the
15   contract they provided is necessarily the one that anyone saw
16   or clicked on because it asks:  Did every new user have to
17   explicitly opt in, i.e., click "accept," question mark, end
18   paren.
19            THE COURT:  And what's that from?
20            MR. PETER:  This is from the terms and conditions that
21   they presented to your Honor that they apparently -- the
22   consumers agreed to; although I have questions whether that
23   actually was it because of that parenthetical in the terms.
24            THE COURT:  Do you want to say something?
25            MR. LENCI:  I do.

Case 1:18-cv-11365-PGG   Document 32   Filed 04/23/19   Page 6 of 12          6
J4HVREIC

```
 1              Your Honor, it's our position -- and I have a
 2    declaration that I could submit with the motion to compel --
 3    that the click-and-accept button was always there; and that the
 4    declaration establishes that these six -- five or six
 5    defendants clicked and accepted.  And the screen said terms and
 6    conditions --
 7              THE COURT:  These plaintiffs, you mean, these five or
 8    six plaintiffs?
 9              MR. LENCI:  Excuse me?
10              THE COURT:  You said defendants.
11              MR. LENCI:  I'm sorry.  I misspoke, your Honor.  It's
12    five or six plaintiffs.  There's only one defendant here.
13              These five or six plaintiffs clicked and accepted,
14    according to our records kept in the regular course of
15    business.  And, as I said, I have a declaration from the head
16    of U.S. operations to establish that.
17              THE COURT:  All right.
18              Are you going to want discovery on this?
19              MR. PETER:  I think I'd like to take a look at that
20    declaration, as I haven't seen it yet.  But I think yes,
21    because it's a summary judgment standard, your Honor, on a
22    motion to compel arbitration.
23              THE COURT:  All right.
24              And so you'll take a look at the declaration.  But
25    assuming you don't find it completely satisfying, what period
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   of discovery do you think would be necessary?
2           MR. PETER:  I think a modest period of discovery
3   perhaps.
4           THE COURT:  Thirty days?
5           MR. PETER:  That works for me.
6           MR. LENCI:  Your Honor, if I may.
7           The typical practice in this cases is to get right to
8   the motion to compel, with all respect, and not to address
9   discovery because discovery is supposed to be addressed in the
10  arbitration.
11          THE COURT:  No, but this would be -- this is not
12  full-blown discovery; this is discovery about whether there was
13  an agreement or not which turns on this "accept" button.
14          And I gather that your position is that the "accept"
15  button is always there and you say you have a declaration that
16  says that.
17          What I'm hearing from plaintiffs' counsel is they want
18  an opportunity to test that.  So the discovery would be about
19  the issue as to whether the plaintiffs and the other
20  purchasers, whether they did, in fact, accept throughout --
21  what is the applicable time period here?  How far back are we
22  going?  There's a million different state laws; I suppose they
23  vary to some extent.
24          MR. PETER:  I believe four years, your Honor.
25          THE COURT:  Okay.  So roughly four years.

1    So the issue would be whether during that entire
2    four-year period, whether the "accept" button was always part
3    of it.
4    So it wouldn't be full-blown discovery; it would be
5    discovery about whether this "accept" button feature was always
6    there or not.  It seems like a pretty discrete issue.
7    MR. LENCI:  If I may, your Honor.
8    There at the time that these plaintiffs clicked and
9    accepted, is that what you're -- just limited to these
10   plaintiffs.
11   THE COURT:  No, I assume that there's a statute of
12   limitation that governs these deceptive trade practices,
13   consumer deception statutes.  As I said, there's many different
14   state statutes that are alluded to, and I don't know whether
15   they have different terms or not with respect to statute of
16   limitations.  They may well.
17   But my point is that I think it's wasteful for the
18   parties to file briefing on the motion to compel arbitration
19   and then have a factual issue emerge.  And it seems quite
20   likely a factual issue is going to emerge.  I might as well get
21   it out of the way at the front end.
22   It's going to be quick, 30 days.  And then once that
23   discovery is complete, you can go -- in fact, we can set a
24   briefing schedule for the motion to compel now; but it would be
25   with the understanding that the parties will do 30 days of

1   discovery focused strictly on this issue of the "accept"
2   button, whether it was always there or not.
3            MR. LENCI:  I will give them the motion when I have a
4   copy of it for them.
5            But, your Honor, if I may, with all respect, the
6   arbitration provision that the plaintiffs agreed to makes the
7   issue of validity of the agreement to arbitrate or the scope of
8   the agreement to arbitrate arbitrable.  And under the *Meyer*
9   case, which is on all fours with this, that goes right to
10  arbitration.  And it's for the arbitrator to decide if the
11  contract was valid or if the agreement to arbitrate was valid,
12  of if the scope of it covers what's in the complaint.  It's a
13  very broad arbitration clause.
14           THE COURT:  All right.  Listen, if you're telling me
15  you want to brief the issue about whether I should allow 30
16  days of discovery, we could do that.
17           MR. LENCI:  I'd prefer that, your Honor.  Thank you.
18           THE COURT:  All right.
19           So in a week's time you'll submit whatever you want on
20  whether I should allow discovery or not.
21           And you'll respond in a week.
22           And then based on that, I'll decide whether there's
23  going to be discovery or not.  Okay?
24           MR. LENCI:  Thank you, your Honor.
25           THE COURT:  So today is the 17th.  So that means that

1    by the 24th, defense counsel will submit either a letter or
2    memorandum, whatever he prefers, telling me why I should deny
3    discovery at this point and proceed right to briefing on the
4    motion to compel arbitration.
5              And then on May 1st, plaintiffs' counsel will submit
6    opposition explaining why it is that I should grant discovery.
7              And then based on those submissions, I'll make a
8    decision one way or the other.
9              MR. LENCI:  Your Honor, my papers are due on the 24th,
10   your Honor?
11             THE COURT:  Yes.
12             MR. LENCI:  And I go first?
13             THE COURT:  Yes.
14             MR. PETER:  Your Honor, perhaps to short-circuit this,
15   if he's willing to not provide any credible evidence in support
16   of his motion to compel arbitration, I can agree that we don't
17   need to have it.
18             THE COURT:  I'm sorry, I don't understand, sir.
19             MR. PETER:  It's a summary judgment standard.  So
20   there needs to be -- he needs to put forth evidence in support
21   of his position, since it's his motion.  If he's willing to
22   agree not to provide any evidence, then I'm willing to not
23   require discovery.  I don't see how he can meet his burden.
24             MR. LENCI:  Your Honor, may I propose something?
25             THE COURT:  Yes.

1    MR. LENCI:  I have the papers here to serve on my
2    opponent.
3    THE COURT:  Right.
4    MR. LENCI:  I have a motion to compel and memorandum
5    of law.
6    In opposition, they can explain, I think, why they
7    think there's no evidence of the click and accept for each one
8    of them.  And I submit, your Honor, that it's all discussed
9    here very thoroughly by Mr. Stohrer.  And if at the end of the
10   briefing your Honor thinks that they have a point, there should
11   be discovery, maybe we can address it then.
12   But it's just so atypical to go into discovery when
13   the arbitration clause requires that this should be sent to the
14   arbitrators in the first place.  And I've got that fully
15   briefed in here, your Honor.
16   THE COURT:  What do you say?
17   MR. PETER:  I would prefer what your Honor had
18   initially suggested, the seven days and seven days on this
19   issue, just so we don't have to go back and forth and do
20   supplemental briefing later on the motion to compel.
21   THE COURT:  That's what I'm going to do.
22   So defense counsel will put in a letter seven days
23   from today explaining why he believes that I should not allow
24   discovery on the question of whether the putative class agreed,
25   pursuant to the "accept" button, to arbitrate any disputes, and

J4HVREIC

1   plaintiffs' counsel will respond a week later with their
2   opposition.
3           MR. LENCI:  Is there a page limit on that, your Honor?
4           THE COURT:  No, no page limit.  And, as I said, it can
5   be a letter or it can be a brief, whatever the parties prefer.
6           MR. LENCI:  We can include exhibits and the like, your
7   Honor?
8           THE COURT:  Yes.  Anything that bears on this issue
9   you think is relevant, absolutely.
10          MR. LENCI:  Thank you.
11          MR. PETER:  Your Honor, would you prefer that to be
12  bundled per your standing order?
13          THE COURT:  Don't care.  You can do it whatever way
14  you want.  Because I'm not seeing it as a typical motion, so it
15  doesn't have to be bundled.  You can submit it when you're done
16  with it.
17          MR. PETER:  Thank you.
18          THE COURT:  Okay?  And we'll take it from there.
19          MR. LENCI:  Thank you, your Honor.
20          THE COURT:  All right.  Thank you.
21          MR. PETER:  Thank you, your Honor.
22          MR. WALSH:  Thank you, your Honor.
23                           *   *   *
24
25